The next case this morning is 5-23-03, People v. Burnett. Arguing for the appellant is James Wozniak. Arguing for the affilee is Adam Rodriguez. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counselors. Good morning. We have read your briefs. We're looking forward to your arguments. Mr. Wozniak, I think you're the appellant. Is that correct? Yes, your honor. Are you ready to proceed? Yes, your honor. All right, I may do so. Thank you. Thank you. May it please the court, counsel. My name is James Wozniak with the State Appellate Defender's Office, and I represent the appellant in this matter, Marquise Burnett. Mr. Burnett filed a pro se post conviction petition, and in that petition, he raised eight different claims. Those claims included that a sentence of 55 years imprisonment was unconstitutional under the Illinois Constitution as applied to him, and that he was actually innocent of the crimes of which he was convicted. Counsel was appointed for second stage proceedings, but Mr. Burnett's counsel did not provide reasonable assistance to Mr. Burnett in two ways. First, counsel did not amend Mr. Burnett's petition to properly present and support his as applied challenge resulting in that claim's dismissal at the second stage, and second, counsel failed to secure the appearance of the alibi witness at the evidentiary hearing, and without that witness's testimony, the court had no choice but to reject Mr. Burnett's actual innocence claim. I can take questions at any time on either of the issues, but I'd like to start the discussion with the as applied challenge issue. A petitioner was 21 years old at the time of the crime, correct? Correct, your honor, yes. So he has to show specific, not just some generic Miller argument, but he has to show specific brain juvenile development type evidence? Correct, he would have to show factually that his 21 year old brain was akin, similar to a juvenile, should be treated as a juvenile for sentencing purposes. He doesn't have any specific evidence to show that, if I remember right, he just has, there was a psychiatrist or psychologist who wrote a letter, so I'd be happy to do an evaluation, but he never actually had the evaluation or never, he doesn't have specific evidence, does he, to show? So appended to his petition, all that he had was a scholar article about, I think from the state of Michigan, regarding life sentences for juveniles and those that are slightly older, and then yes, he had a letter from, and kind of a report from this Dr. Garbino that also said that he could essentially create a report to be used at a hearing. There was also evidence in the pre-sentence investigation report that would have been useful for a hearing on an as applied challenge. Mr. Burnett was twice, at least part of the, there was an abuse and neglect case against his mother, where he was in foster care, he was shot when he was, I believe, a juvenile, he never knew his father, so these would have been all facts that one would hope would have been presented at the evidentiary hearing for an as applied challenge that could have been amended into his petition by his counsel. Both, they were included in the PSI that would have been considered by the trial judge at the sentencing, correct? Correct. Correct. For the abuse and, yes, that background information, yes, was in the PSI that would have been considered. The court, the sentencing court didn't specifically mention that it considered any of those specific things, but obviously it did consider the PSI for sentencing. Here, counsel, you know, for reasonable assistance under Rule 651C, obviously you have to consult with, she needs to consult with Mr. Burnett, examine the record, and make any amendments to his pro se petition to adequately present his claim. A 651C certificate presents a rebuttal presumption that counsel has performed those tasks. Here, counsel didn't file a 651C certificate. She filed a 604D certificate. So the presumption is not automatically here, and the record would also rebut that counsel provided reasonable assistance. Again, Mr. Burnett's not an attorney. He's doing the best he can as a layperson to lay out his legal as applied claim. He cites the applicable case law at the time that was in effect for this area of law. He appends the reports, the scholarly article, the letter from Dr. Garabino. So this is something that should have been obvious to counsel as to what claim he was attempting to raise, and that it required an amendment to present the actual facts as to properly present this as applied challenge. What counsel says at the second stage hearing, or the state's motion to dismiss hearing, is that Mr. Burnett could not articulate this claim to her, and therefore it was not added to the main part of the petition. So she doesn't outright reject the claim, saying it has no merit. She just doesn't amend it so that he can articulate it. Ultimately, the trial court dismisses this claim, saying, again, that he was unable to articulate to counsel, and the court could not understand the claim from the pro se petition. But that was the exact role of counsel here, was to amend this petition so that the court could understand the claim, both legally and factually here, at least factually enough at the second stage to move it to an evidentiary hearing. And let's be clear here. I mean, just because this would move, if moved to a third stage hearing, doesn't mean that in the proper facts were presented, or whatever facts that Mr. Burnett could show, doesn't mean that the court is going to say that the trial court that has applied to him his sentence was unconstitutional, but he deserved a shot to get to that hearing with the reasonable assistance of counsel. He could have at least gotten to that hearing so that the facts could be presented so that the court could make a determination here on whether or not, as applied to him, his sentence was unconstitutional. Moving on to the second issue with the Thursday. So the court did move a couple issues to a third stage evidentiary hearing, one of which was that Mr. Burnett had a witness who the public defender investigator spoke to, Ms. Shakur, who said that she was with Mr. Burnett on the day of the shooting, and that she heard the shots, and he was not the one that shot a gun that day. Again, an investigator spoke with her, gets a phone number, gets a purported address. As the evidentiary hearing is going to happen several months before, counsel attempts to subpoena her. As the sheriff's deputies do this, they try three times at this address. They note that it's not a good address for her. Counsel gets a continuance, attempts to subpoena again. And finally, the sheriff's deputies make contact with someone, her aunt, that is actually there, and says she doesn't live here and doesn't know an address, and then counsel goes forward with the hearing without getting Ms. Shakur's appearance. Reasonable assistance is for second and third stage proceedings, and here, counsel didn't make reasonable efforts to secure Ms. Shakur's appearance. She should have known already at the first subpoena that Ms. Shakur was not at that address, yet she continues to attempt to secure her appearance by subpoenaing her at that address. Doesn't apparently make any phone calls to her, even though they have her phone number. The public defender investigators already spoke to her, and doesn't ask for any kind of continuance, and at the evidentiary hearing, even says, hey, look, judge, if you grant a new trial here, the relief that we're seeking, I'll get Ms. Shakur here to testify in front of the fact-finder. Well, she was that confident that she could do that at a trial. She should have been confident she could have got her at the evidentiary hearing, which she did not do. I'm sorry, counsel, I just wanted to get a question before time runs. Wasn't there evidence, and if I'm remembering, we've got several cases that kind of run together today. Wasn't there very contradicting evidence, maybe a video that showed the defendant was present in that general vicinity at the time of the shooting, and maybe some other eyewitnesses? If I'm recalling, and if I'm reading my notes properly. So this is, yeah, there's a lot of contradictory evidence. The main witness for the state, Mr. Mosley, at trial says he doesn't see, he sees Mr. Burnett, but does not see who shot the victim in this case. He did speak with police, and his police interview was shown, he said he saw Mr. Burnett firing the gun. There is video evidence, but it's grainy, the witnesses said it's hard to see, and no one has actually specifically identified on the video, and Mr. Burnett's not identified on the video as a person, I think the only person they could technically identify as the victim because he was riding a bicycle, and you see that in the video. There's other witnesses around that see Mr. Burnett, but they don't see him with a gun. There's some witnesses that say Mr. Burnett runs into a house afterwards and makes some incriminating statements. Doesn't say that necessarily outright that he shot anyone, but what this witness- He said someone's dead and I need to get rid of a gun. I mean, he didn't say I shot him, but he said somebody's dead, I need to get rid of a gun, and then they found the gun in that person's backyard, right? I believe what they said, well, he said it was, we got him, yeah, and then there's three people and they're discussing about getting rid of a gun. I don't remember if the witness that heard that specifically said that Mr. Burnett was the one that said that, but I guess all three of them were discussing that. There is a gun that is found in a backyard also, yes. Wasn't the house that he allegedly ran into, didn't the owner of that house identify him specifically as saying that something along the lines of, bitch, I killed him? Yeah, something like, now you're dead. I'm trying to remember, I'm looking, trying to find what the comment was, Justice Barberos. I believe it was a juvenile female that was in the house that was present in the house that heard him say that, and yeah, I don't know, I don't remember. My point is, if we're talking about a statement from an affidavit from someone who says he was one block, two blocks away at the time of the shooting, and now we have an eyewitness who says he ran into my house, I identified him as being who he is, and he was there immediately after the shooting and said whatever he said, doesn't that really cast a lot of doubt into what the affidavit's going to say as far as being two blocks away at that time? Well, I think the point here would be, Your Honor, was that Ms. Shakur, so her, she doesn't provide an affidavit, it's the investigator, and I agree that evidentiary hearing, at an evidentiary hearing, the court should be looking at the prior testimony and what Ms. Shakur said and ascertain her credibility, and then decide whether or not this warrants a trial. The court doesn't even get this opportunity to ascertain her credibility, and if a trial court sees Ms. Shakur and finds her very believable into what she said she saw, none of the trial evidence, yes, the trial evidence circumstantially together was obviously enough to convict Mr. Burnett, but at trial, there's not a single eyewitness that says Mr. Burnett is the person who shot the victim. Other witnesses, none of the witnesses see him with a gun. They see him in the area, and there's also these statements that he makes once he goes into this house, and then, of course, you have Mr. Mosley's prior statements to police, but at least at trial, no witness is saying Mr. Burnett is the person who shot the victim in this case. So, for those reasons, Your Honor, we would ask that you find that counsel provide unreasonable assistance, and that this matter be remanded for new second-stage proceedings, and eventually, potentially new evidentiary hearing, depending on what goes on in those cases. Not for me. No questions. Thank you. We'll come back to you for rebuttal in just a moment. Mr. Rodriguez, you ready to proceed? Yes, I am. You may do so. Thank you. Good morning, Your Honor's counsel, and may it please the court. Defendant has failed to prove, based on the record, that he received unreasonable assistance from his post-conviction counsel, where his purported alibi witness did not support otherwise meritless actual innocence claim. In this case, PC counsel engaged in diligent and reasonable efforts to serve Mishakur, the purported alibi witness, to testify at the third-stage evidentiary hearing. The fact that those repeated efforts were ultimately unsuccessful does not constitute deficient performance. Moreover, despite not being able to have Mishakur testify, post-conviction counsel was still able to persuade the court to consider the affidavit and investigate a report of PD investigator guests in place of Mishakur's live testimony. These actions further negate a claim of deficient performance. Furthermore, defendant is unable to show prejudice because Mishakur's existence as the purported alibi witness did not constitute newly discovered evidence for purposes of an actual innocence claim. Given the overwhelming evidence establishing defendant's identity as the shooter on the scene of the crime, the post-conviction court's finding was not manifestly erroneous, or excuse me, the PC court did not manifestly err when it determined that the evidence regarding Mishakur was not credible, and therefore of not such a conclusive nature, that it would have likely changed the result on retrial. As such, defendant cannot establish prejudice by post-conviction counsel's inability to present the purported alibi witness at the hearing. I would like to address the issue that counsel brought up about the Rule 651C certificate. As this court stated in Peeble v. Hotwagoner, the failure to file a certificate showing compliance with Rule 651C is harmless error if the record demonstrates counsel adequately fulfilled the required duties. In this case, counsel's poorly drafted certificate citing 604D instead of 651C was harmless error since, consistent with Hotwagoner, the record does show that counsel competently provided defendant with reasonable assistance in conformity with the requirements and duties of 651C. Can you discuss specifically what you think shows counsel complied with 651, even absent the certificate? Absolutely, Judge. So in the motion, the amended motion, post-conviction motion, counsel included an affidavit in which she indicated, asserted that she complied with the first two requirements that you would normally see in Rule 651C. And then analyzing the record itself, it's clear that the third requirement, she spoke with defendant, she indicated in the motion that she communicated with him and therefore didn't make any amendments to a defendant's petition because of the lack of any specific facts and circumstances supporting an as-applied Miller Proportionate Penalties Clause claim. So in that regard, counsel complied with rule, with the third mandate of Rule 651C by not amending a claim that, in her opinion, she determined was not meritorious. Why is it not inefficient or improper representation to fail to follow up on the Garbarino letter, the letter from the doctor who said, I can evaluate your client and give you a report on Miller factors? Why, they didn't seem to follow up on that. Why is that not a problem? Certainly, Judge, because at the second stage, all the well-pled facts in the affidavit and the supporting documentation are taken as true unless positively rebutted by the record. Here, defendant failed to well-plead any facts. So counsel cannot, under Greer, be found to be unreasonable in advancing a spurious or meritless claim, which is what occurred in this circumstance. Counsel spoke with a defendant, asked him to elaborate on this Miller Proportionate Penalties Clause claim, and defendant wasn't able to. So therefore, in good conscience, counsel couldn't ethically advance a claim that had no basis in fact. And the people requested to cite additional authority, People v. Huff, and I think that might really, a discussion of that might cut to this issue. In Huff, the defendant filed a pro se PC petition and presented a single-apprentice claim. PC counsel filed the Rule 6021C certificate but made no amendments to defendant's petition. The court was analyzing whether PC counsel's decision to not amend the petition rebutted the presumption of reasonable assistance. It was noted that in that case, defendant did not identify any amendments to his pro se petition that could have survived dismissal, exactly as in this situation here. As the Huff court explained, quote, if appointed counsel knows that the contentions in the petition are, apparently without merit, fully frivolous, counsel has an ethical duty not to needlessly consume the time and energies of the court and state by advancing frivolous arguments. That's Huff at paragraph 28, citing Greer. As to the question of whether PC counsel can present to petitioners contentions when counsel knows they are frivolous, the court reiterated its answer in Greer that, quote, counsel could not continue to present a petitioner's known frivolous claims. Moreover, as to PC counsel's assessment of the merits of a claim, of a petition, excuse me, the Huff court underscored that the court and not counsel is the ultimate arbiter of whether the claims in the petition are meritorious. Thus, in this case, consistent with the court's reasoning in Huff and Greer, PC counsel made the ethical choice not to needlessly consume the court's time by advancing a frivolous argument that had no support in the record. Instead, PC counsel amended the petition to advance the claims that they felt were meritorious. And as to the claims counsel believed were not meritorious, counsel presented those claims to the court with an explanation as to why they did not advance them. Ultimately, PC counsel stood on their motion during the motion to dismiss hearing and left the decision as to whether the claims in the petition were meritorious to the post-conviction court as the ultimate arbiter. The court reviewed the defendant's Miller-based claim to third stage and those actions in total were not unreasonable and did not demonstrate unreasonable assistance. Do you think pointing out the supposed spurious claims and then addressing why they weren't advanced shows compliance with 651 absent the certificate? Absolutely, Judge. It shows that counsel did consider those claims. It provides an explanation as to why counsel did not present them to the court, but it also provides a court with the ability to understand what the claim was and sort of the factual circumstances surrounding it as opposed to the circumstances where defendants have been found or counsels have been found unreasonable where they said, I didn't want to advance that claim or they engaged in arguments which worked against defendant. Here, counsel stood on defendant's amended petition. They included those claims in a section of the amended PC which stated the basis why, which is all in the ethical duties that counsel was required to adhere to when addressing the claim that they found was not meritorious. I'd like to, in the time I have left, bounce over to issue one. The court was asking counsel a minute ago regarding the statements the defendant made at the time of the shooting and how those implicated his claim of a purported alibi of Ms. Lopeman, who was the witness in the home who observed defendant and three other, two other individuals enter the home at 336th of the record, described defendant and the other two men as panicking and Ms. Lopeman testified that she heard defendant boastfully proclaim, yeah, bitch, now you're dead, bitch, got that n-word. And that occurred immediately preceding the shooting. That testimony was further corroborated by Mr. Mosley's testimony where he indicated that he identified the defendant G. Queese as standing in the middle of Eureka Street at the time of the shooting. That was further supported by Ms. Mosley's statements to Detective Bednar's marking defendant's location on a map near 506 and 508 East Eureka. That was further supported by defendant's own video statements where he not only indicated on the map with his finger where he was located on Eureka Street, but also stated that he was on Eureka at the time of the shooting, and then also marked an X on there. So to the, uh, and furthermore, the surveillance video corroborates the other testimony regarding defendant's location, as well as Mr. Manning, the victim's brother, who identified defendant as being on Eureka Street at the time of the shooting. In fact, the PC Court found the defendant, as I indicated a moment ago, the PC Court found the defendant drew an X on Eureka Street where he was at the time of the shooting, which was supported by testimony of Mr. Mosley and Ms. Lobman. As such, the PC Court did not find that the proper testimony of the alibi witness was credible or of such a conclusive nature that it would change the result on retrial. Therefore, the defendant cannot show prejudice resulted from PC Counsel failing to present her at the evidentiary hearing where said testimony was not newly discovered evidence and was not, and led no support to an otherwise meritless actual innocence claim. As this court explained in Watson, a claim premised on PC Counsel's failure to call potentially exculpatory witnesses at third stage requires a prejudice analysis. Here, defendant cannot establish prejudice, nor does he even attempt to. And as regards to deficient performance, Counsel was absolutely reasonable in attempting to make diligent efforts to have Ms. Shakur serve at the address that she identified to PD investigator Guess. The fact that those attempts were ultimately unsuccessful does not demonstrate that Counsel was acted deficiently. And in fact, given the absence of Ms. Shakur's presence at the third stage evidentiary hearing, Counsel was still able to persuade the PC Court to consider the affidavit and the contents of the investigative report in place of Ms. Shakur's live testimony. So that further arose a claim of deficient performance. And the entirety of defendant's argument in this speculation as to what Counsel should have done. But as this court's well aware, under Strickland, you don't analyze deficient performance through the distorting lens of hindsight. Rather, this court looks at Counsel's conduct at the time and whether it was reasonable. And in this situation, where four attempts were made to serve the witness, and on the fourth attempt, it was identified that that address was no longer a good address for her. She did not live there due to her aunt indicating as such. PC Counsel chose to proceed forward with the claim and was still able to persuade the court to consider the substantive information contained within that affidavit and report. Counsel, your time is up unless there are other questions. Justice Barbera, do you have questions? No. Justice Bowie? No questions. All right. Thank you. Appreciate it, Mr. Rubio. Rebuttal, Mr. Wozniak? Thank you, Your Honor. Just briefly. First, at post-conviction proceedings, reasonable assistance has to be shown. Prejudice does not have to be shown. So we don't have to show that he was prejudiced in counsel not amending the as-applied challenge or calling getting the secured to appear at the adventure hearing, but he was prejudiced. Even if we were looking at this as a under Strickland, he was definitely prejudiced by his counsel's actions. The other thing is that when Mr. Burnett filed his first pro se petition, he makes an actual innocence claim, but he doesn't append. I believe he mentions Ms. Secure's name, but he doesn't append any affidavit or statement from her. Counsel amends the petition to then add an affidavit of the investigator after he spoke with Ms. Secure. Counsel should have done the exact same thing with the as-applied challenge. Again, he's got a legal claim that's obvious on its face. The case law is clear at the time. Mr. Burnett cites the applicable case law, and then he appends some information, but part of it is this letter from Dr. Garabino that said he can essentially make a report that can be used as applied challenge, something that didn't exist at the time of his sentencing and would, from the sound of the letter, likely based on Dr. Garabino's expertise, be tailored to Mr. Burnett's background, and then coupled with the science of an emerging adult, a 21-year-old brain being more akin to a juvenile, that's what counsel needed to do, was to amend the petition to add this information. Mr. Burnett, he says he doesn't articulate it to him. The articulation is the facts of himself, but also it could be that he knows about himself, but it could be family members, friends, potentially people in the Department of Corrections that have interacted with him, the doctor, other experts that would present his as-applied challenge. I want the court to consider here, again, even if the court grants our request and Mr. Burnett gets a chance at second-stage proceedings to develop his claim and maybe get that advanced to the third stage. He gets a chance to get Ms. Shakur to come into an evidentiary hearing, and then the trial court gets to sit and judge those claims based on Ms. Shakur's credibility, and then the evidence that has presented and decide whether or not a sentencing hearing is warranted or a new trial is warranted. But the trial court may say that neither of those are warranted after these claims move to second-stage proceedings again and then potentially an evidentiary hearing. But if this court finds that counsel did provide reasonable assistance and that the dismissal of his claim and then the ultimate denial is affirmed, Mr. Burnett is very unlikely to be able to ever raise these claims. The current case law from Moore and Williams on 21-year-olds or 19- to 20-year-olds has pretty much said that these claims raised in successive post-convictions petitions are no longer appropriate, but post-conviction, they can be raised. And we would have the issues of res judicata, so it'd be very difficult to show cause of prejudice at a successive PC proceeding. Thus, this is Mr. Burnett's shot to get this before the trial court to properly be decided, and they weren't because his counsel provided unreasonable assistance. So for those reasons, Your Honors, we'd ask that, again, that the decision of the trial court be reversed and that this matter be remanded for second-stage post-conviction proceedings. Thank you, Mr. Wisenyak. Questions, Justice Barberos? No. Justice Bowie? No. All right. We appreciate your arguments. We've read the briefs. We'll consider those and your arguments today. We'll take the matter under advisement and issue a decision in due course.